# CHARLESTON.

## McClintock v. Loisseau.

Submitted September 13, 1888.—Decided December 8, 1888.

1. TRUSTS AND TRUSTEES—EVIDENCE—CONVEYANCE TO SON.

Where a father purchases land and has it conveyed to his son, the presumption is, that the purchase was intended to be an advancement or gift to his son, and no trust results in favor of the father. But extrinsic evidence either written or parol is admissible on behalf of the father to rebut this presumption and to show, that a trust results in his favor. (p. 869.)

2. SPECIFIC PERFORMANCE—CANCELLATION OF DEED—FRAUD—*PARTICEPS DOLI.*

Where a contract has been made to accomplish a fraudulent purpose, a court of equity will not at the suit of a party to the fraud,—a *particeps doli*,—if the contract is executory, either compel its execution or decree its cancellation, nor, after it has been executed, set it aside and thus restore to the plaintiff the property or other interest, which he has fraudulently transferred. It will leave the parties in the position, in which they have placed themselves. (p. 870.)

3. SPECIFIC PERFORMANCE—RIGHTS OF HEIRS—FRAUD.

This rule applies not only to the original parties to the fraudulent transaction but also to their heirs and to all parties claiming under or by title derived from them, where no equitable rights intervene to protect such parties. (p. 871.)

4. SPECIFIC PERFORMANCE—EVIDENCE—FRAUD—ADVANCEMENT.

A father purchased real estate, and had it conveyed to his son by an absolute deed. In a suit in equity by the heirs after the father's death to set up a resulting trust in their favor they cannot be permitted to show, that the conveyance to the son was made for a fraudulent purpose by the father, in order to rebut the presumption, that it was an advancement or gift to the son. (p. 872.)

*Barna Powell* for appellants.

*J. B. Jackson* for appellees.

SNYDER, JUDGE :

Louis J. Loisseau died intestate, in Wood county this State on February 12, 1879, leaving a widow, Henrietta Loisseau,

and five children, viz., Eugene, Matilda, August C., Louis N. and Alfred Loisseau, as his heirs-at-law. Eugene was the son by a former marriage. He was born in France and always resided there. The father removed to and became a resident of the United States many years before his death. After his immigration to this country he married the aforesaid Henrietta, who is the mother of the four children last above named. The decedent and his family except the said Eugene resided in the city of Parkersburg for several years before and at the time of his death. The said Matilda having become the wife of W. N. McClintock, she and her husband in December, 1879, filed their bill in the Circuit Court of Wood county against the widow and the other children of said Louis J. Loisseau, deceased, and the S. P. Wells Oil Company, a domestic corporation.

The material allegations of the bill are, that prior to the year 1874 the said Louis J. Loisseau had purchased, in the name of his son Eugene, from one B. H. Latrobe, certain real estate consisting of several lots of land situate in the city of Parkersburg, which was afterwards by deed dated May 16, 1877, conveyed by said Latrobe to said Eugene; that, acting under a power of attorney executed by said Eugene and wife in the city of Paris, France, the said Louis J. in his own right and as attorney in fact for said Eugene and wife executed to S. P. Wells and others a deed of lease for a part or all of said real estate for the term of ten years from the 23d day of January, 1874, for $500.00 and the annual payment of $300.00 during the term of the lease; that after the death of the father, Louis J., the said Eugene and wife by deed with special warranty dated September 22, 1879, conveyed the whole of said real estate to the defendant, the S. P. Wells Oil Company, in consideration of $1,200.00; that the widow, the said Henrietta Loisseau, had at the September rules, 1879, instituted in this court a suit to have her dower assigned in said real estate, but that afterwards on October 13, 1879, she sold and conveyed all her interest in said real estate to the said S. P. Wells Oil Company in consideration of $600.00, whereby the said Oil Company became entitled to the said dower interest in said real estate.

The plaintiffs then aver, that the said Louis J. for many

years previous to his death was disagreeable and abusive to his wife and the children of his family; that, although he continued to occupy apartments in the same house,—a house owned by his wife,—his habit was to supply, cook and eat his own food and leave his wife and children to shift and provide for themselves,—his ultimate purpose being to leave this country, desert his wife and children here, go to France and make that his home, as soon as he could make a satisfactory sale of the real estate aforesaid; that said Louis J. purchased and paid his own money for said real estate, without the knowledge of his son Eugene and without any aid from him; but for the purpose of evading his legal responsibility to his wife and family, and to enable him to sell and convey said real estate away from his wife without her consent, the said Louis J. made the purchase of said real estate in the name of and had the same conveyed to said Eugene; that the said Eugene never paid any consideration for said real estate; that it was never intended by his father, that he should have any interest therein, nor did he ever claim to have any until after his father's death, but on the contrary admitted, that it belonged to his father; that the said Eugene held the title to said real estate simply as trustee for his father, and the sole purpose the father had in making the purchase in his son's name and having the title conveyed to him was to enable the father through his said son and trustee to sell and convey the said real estate without the consent of his wife, and thus to facilitate his scheme to desert her and his family and to defraud her of her right to dower therein as also of any means to charge said real estate for the support of herself and children.

The bill further avers and charges, that the defendant, the S. P. Wells Oil Company, its officers and agents were fully advised, that Louis J. Loisseau was the real owner of said real estate long before his death, and that they were specially informed, that the plaintiffs and the other children of the said Louis J. claimed to own said real estate, long before the said company purchased the same from the said Eugene Loisseau, and that the said purchase was made with full notice of the rights and interest of the plaintiffs in said real estate. The prayer of the bill is for an account of rents and

profits of said real estate, partition of the same, and for general relief.

The defendants, August C. and Louis N. Louisseau, answered admitting the truth of the allegations of the bill, and joining in its prayer for relief.

On March 22, 1881, the cause was heard on the bill taken for confessed as to the defendant, the S. P. Wells Oil Company, and the court entered a decree granting the relief prayed for in the bill. This decree was however on April 2, 1881, that being a subsequent day of the same term, upon the motion of the said S. P. Wells Oil Company suspended, and leave given to said company to file its answer, which it did on the following day. By its answer said company denies, that the said Eugene Loisseau held said real estate in trust for his father, or that the company at the time of its purchase from said Eugene had any notice of any such trust or of any claim of the heirs of said Louis J. Loisseau, deceased, to the said real estate. Depositions were taken and filed by both the plaintiffs and defendants, and on December 3, 1887, the cause was finally heard on its merits; and the court being of the opinion, that the plaintiffs were not entitled to any relief, entered its decree dismissing the plaintiff's bill with costs. From this decree the plaintiffs have appealed.

It is claimed for the appellants, that inasmuch as the court by its decree of April 2, 1881, simply suspended its former decree of March 22, 1881, it erred in dismissing the bill by its final decree without having set aside said decree of March 22, 1881. This decree as well as the one suspending it was made at the same term. This court has decided, that the court may at any time during the same term modify or set aside any decree entered by it. *Kelty* v. *High*, 29 W. Va. 381, (1 S. E. Rep. 561). The Court therefore had the legal right to suspend said decree of March 22, 1881, at the time it did; and, as the final decree did in effect set aside and annul that decree, the appellants were not prejudiced.

It is further contended for the appellant, that the facts alleged in the bill show, that Louis J. Loisseau had by resulting trust an equitable title or right to the real estate therein mentioned, which upon his death descended to his

legal heirs. It is well settled, that where land is paid for by a stranger, and the conveyance is made to another, a resulting trust will in equity arise in favor of the person thus paying the purchase-money. *Murray* v. *Sell*, 23 W. Va. 475; *Shaffer* v. *Fetty*, 30 W. Va. 248, (4 S. E. Rep. 278). But where the consideration is paid by a husband or father, and the deed is made to his wife or son, the presumption is, that the purchase was intended to be an advancement or gift to the grantee, and no trust results. *Lockhard* v. *Beckley*, 10 W. Va. 87. As this rule is based on presumptions of fact, extrinsic evidence either written or parol is admissible on behalf of the husband or father paying the consideration to rebut the presumption of an advancement or gift and to show, that a trust results, and conversely such evidence may be used to fortify and support the presumption.

In general this extrinsic evidence to defeat an advancement and establish a trust, as against the grantee and those holding under him, must consist of matters substantially contemporaneous with the purchase or conveyance, so as to be fairly connected with the transaction. 2 Pom. Eq. Jur. § 1,041; *Jackson* v. *Matsdorf*, 11 Johns. 91. It has been held that possession of the estate and the receipt of its rents by the father during his life, after conveyance to his child, or a devise or lease of the property by the father after the purchase, will not be sufficient to rebut the presumption of an advancement or gift, and to establish a resulting trust in favor of the father. *Lamplugh* v. *Lamplugh*, 1 P. Wms. 111; *Crabb* v. *Crabb*, 1 Mylne & K. 511; *Jeans* v. *Cooke*, 24 Beav. 513. According to these authorities, it seems to me, the allegations of the bill are insufficient to rebut the legal presumption, that the purchase and conveyance of the real estate in controversy by the father, Louis J. Loisseau, in the name of his son Eugene was intended to be an advancement or gift to the son. On the contrary they tend to show that the reverse was intended.

It is alleged, that the purpose of the father was to deprive the wife of her dower and the children by her of any claim upon this property for their support. If a resulting trust had existed in favor of the father, then his purpose in respect to

both his wife and children would be defeated, because his wife would be entitled to dower in this equitable estate, and his children by this wife would in part at least inherit it upon his death. These are the two things, which, the bill alleges, it was the purpose of the father to prevent. In order to give this purpose the effect, which, the bill avers, the father intended it should have, the conveyance to Eugene must be treated as an advancement or gift by the father.

But, be this as it may, there is another view of the case made by the bill, which concludes the right of the plaintiff to any relief. It is a maxim in equity, that, where a contract has been entered into through fraud or to accomplish any fraudulent purpose, a court of equity will not at the suit of one of the fraudulent parties, a *particeps doli*, while the agreement is still executory, either compel its execution or decree its cancellation, nor, after it has been executed, set it aside and thus restore the plaintiff to the property or other interest, which he had fraudulently transferred. Equity will leave such parties exactly in the position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent participants. The only equitable remedies which they can obtain are purely defensive.

Upon the same principle, whenever one party in pursuance of a prior arrangement has fraudulently obtained property for the benefit of another, equity will not aid the fraudulent beneficiary by compelling a conveyance or transfer thereof to him; and generally, where two or more have entered into a fraudulent scheme for the purpose of obtaining property, in which all are to share, and the scheme has been carried out, so that all the results of the fraud are in the hands of one of the parties, a court of equity will not interfere on behalf of the others to aid them in obtaining their shares, but will leave the parties in the position, where they have placed themselves. 1 Pom. Eq. Jur. § 401; *James* v. *Bird*, 8 Leigh. 510; *Johns* v. *Norris*, 22 N. J. Eq. 102; *Horn* v. *Foundry Co.*, 23 W. Va. 522. A voluntary or fraudulent conveyance, though made to defraud creditors, is binding upon the parties thereto. *Chamberlayne* v. *Temple*, 2 Rand.

(Va.) 384; *Core* v. *Cunningham*, 27 W. Va. 206. This rule applies not only to the original parties to the fraudulent transaction, but also to the heirs and representatives of those parties, and generally to any parties claiming under or through or by title derived from such fraudulent parties, where no equity such as a *bona fide* purchase intervenes to protect them.

Thus in *Owen* v. *Sharp*, 12 Leigh. 427, it was decided, that, where one makes a fraudulent bill of sale of a female slave absolute on its face in order to protect the property from his creditors but with a secret trust, that the grantee shall hold the property for the benefit of the grantor's daughters, the daughters can not in equity establish the secret trust and have a decree for the slave her increase and profits. The Court in that case says: "The deed being absolute, the plaintiffs attempt to establish the secret trust and in doing so shows the intent, with which it was created. If the facts were reversed, if the trust had been expressed on the face of the deed, and the grantee had refused to execute it on the ground of fraud, he would then be compelled to allege his own fraud to protect himself and could not be heard."

Thus, whenever a party whether plaintiff or defendant is compelled to allege his own fraud to protect himself, equity will refuse to hear him or grant any relief. *Starke* v. *Little-page*, 4 Rand. (Va.) 368. If the widow, Henrietta Loisseau, had prosecuted her suit, this rule would not apply in her case, for the reason, that she neither claims under the husband, nor was she a party to the fraudulent transaction. Her right to dower arises out of the marital relation and is fixed by law regardless of the acts of the husband; but she is not a plaintiff in this suit, and moreover having conveyed all her right and title in the subject in controversy she has no interest in this suit, and therefore any consideration of what might have been her rights under other circumstances may be dismissed.

But the female plaintiff and the other children of Louis J. Loisseau, who ask relief in this suit, come clearly within the equity rule above announced. They stand in the place of their father. They are his heirs-at-law, and the only claim they have or assert is derived as such heirs from their father.

They are simply volunteers claiming the benefit of his act and seeking it through his fraud. The defendant, Eugene Loisseau, at the time his father died, had an absolute conveyance of the property, which vested in him a complete title. Proof, that the father paid the full consideration, would not of itself, as we have shown, raise a resulting trust in favor of the father or his heirs. In order to establish such trust, proof must be offered to rebut the presumption, that the conveyance to the son was intended as an advancement or gift. This the plaintiffs attempt to do by alleging, that the conveyance was fraudulent. The bill alleges, that the sole purpose of the father in having the property conveyed to the son was to defraud his wife of her right of dower, and to enable him to desert his family, and avoid the responsibility of their support.

Certainly the father would not be permitted to succeed in a court of equity by alleging his own fraud; and the plaintiffs, who stand in his place and derive title from him, if they have any, can not for the same reason be heard to allege the father's fraud. They must accept the whole situation. They can not claim the benefit of the fraudulent act of the father and escape the consequences of his fraud. If they claim under him and upon the consideration paid by him and none other, they can only obtain what he had. If his claim was of such a nature, that he could not enforce it in a court of equity, neither can the plaintiffs claiming as his heirs do so. What he had, they got, and nothing more; and, as he had no demand, which he could enforce in a court of equity, neither have they.

It necessarily follows, that, if neither the father nor the plaintiffs could obtain any relief against Eugene Loisseau, the grantee of the real estate in controversy, the plaintiffs are not entitled to any relief against the S. P. Wells Oil Company, the purchaser from Eugene, whether said purchase was made with or without notice of the pretended rights of the plaintiffs. The decree of the Circuit Court must therefore be affirmed.

Affirmed.