# CHARLESTON.

## SMITH v. TURLEY.

Submitted January 11, 1889.—Decided January 29, 1889.

1. HUSBAND AND WIFE—RESULTING TRUST.
   *Quœre*, whether a resulting trust arises in favor of a wife, if the husband acquires property with her separate estate, and without her knowledge and consent takes title in his name. If so, the proof must be clear and explicit to establish that fact especially against husband's creditors.

2. HUSBAND AND WIFE—RESULTING TRUST.
   Long lapse of time will defeat its enforcement. (p. 16.)

3. HUSBAND AND WIFE—RESULTING TRUST.
   It must arise at the time the title is taken. No subsequent oral agreement or payment will create it. (p. 17.)

4. HUSBAND AND WIFE—RESULTING TRUST.
   The wife is incompetent to prove any transaction or communication personally between herself and her husband going to create or sustain the trust or any admissions by him of its existence, not only as against his heirs, but also his creditors seeking to subject the property. (p. 20.)

5. ANSWER—NEW MATTER—REPLY—COMMON-LAW PLEADING.
   An answer containing new matter calls for reply in writing under secs. 35, 36, ch. 125 Code only when such new matter in its nature, as applied to the cause, calls for affirmative relief against some of the parties and is not simply matter of defence of plaintiff's case; and it may by its matter call for such reply only from certain of the parties and not from others, or only as to part of its matter and not as to the residue thereof. (p. 19.)

6. PARTIES.
   The personal representative must be a party before debts can be decreed against a decedent's estate. (p. 20.)

*Simms & Enslow* for appellant.

*J. H. Ferguson* for appellee.

BRANNON, JUDGE: .

In 1860 Elijah Turley purchased in his own name a tract of 292 acres of land in Cabell county at a sale under decree, and a deed was made to him. He held the land until his death in 1884, leaving Agnes Turley, his widow, and certain children. In February, 1885, D. L. Smith filed his bill in equity in the Circuit Court of Cabell county to sell this land to pay judgments recovered against Elijah Turley in 1877, making Agnes Turley and said children defendants. Agnes Turley filed her answer alleging that said land had been purchased by Elijah Turley with money belonging to her, derived from two deceased uncles; that part of the money ($637.49) derived from one of the uncles she directed her husband to invest in this land, it being distinctly understood between her and her husband, that the title to said land, when purchased, should be conveyed to her, and that she always understood and believed during his life, that it had been conveyed to her, and never knew to the contrary until after his death; that he always called it her land; and that afterwards she derived about $2,200.00 from the estate of another uncle, out of which she paid the balance of the purchase-money not paid at the time of the purchase.

It appears from the evidence, that in 1860 $637.49, money of Agnes Turley and her sister from an uncle's estate, was paid on the land by their receipting to the commissioner for that amount on their shares in the proceeds of the sale of the land of the uncle's estate, said tract of 192 acres being a part thereof; and that in 1870 $1,200.00 out of the $2,200.00 derived by Agnes Turley from another uncle was paid on the land. Under a reference the plaintiff's and various other debts considerable in amount were reported against Turley's estate.

In her answer Agnes Turley prayed that said land be exempted from debts of her husband, and that his heirs be required to convey the legal title of the land to her in execution of the alleged trust. The court held the land not liable to Turley's debts and dismissed Smith's bill, and Smith obtained an appeal to this Court.

The claim of Agnes Turley to exempt the land is based on the theory of a resulting trust from the purchase of the land with her money under agreement with her husband, that it was to be acquired in her name. In *McGinnis* v. *Curry*, 13 W. Va. 64, Judge .GREEN says : "It is well settled, that, where. upon a purchase of property the conveyance of the legal title is taken in the name of one person, while the con- sideration is given or paid by another, the parties being strangers to each other, a resulting trust immediately. arises from the transaction, and the person named in the convey- ance. will be a trustee for the party, from whom the consider- ation .proceeds." And it seems that where a husband purchases land in his own name with the separate estate of his wife, a trust arises in her favor. 1 Perry .Trusts, § 127, citing many cases. Usually a trust comes from the fact, that the wife's money has been used in the purchase, and without her knowledge or consent the deed is .taken in the husband's name. Wells, Mar. Wom. §§ 213, 214, p. 258.

But Mrs. Turley's case does not meet the requirements of the law. .The deed to her husband was made in May, 1860. The purchase had been confirmed in his name by decree in the open court prior to the date of the deed, and the deed was put on the public record in 1867, and she allows this important matter to sleep, and her husband to die as late as 1884 without obtaining a deed, taking no step to assert her claim, until her husband's creditors attack the land, when she filed her answer, in .February, 1885. In . substantially the language of Judge CHRISTIAN in *Miller* .v. *Blose's Ex'r.* 30 Gratt. 750, after . the lapse of a quarter of a century it is claimed, that this land,.though held by Turley for this great length of time under a deed absolute on.its face.and long on record informing. his creditors and the world, who chose to deal with him, that the land was absolutely his, can not be subjected to his debts, and that he held the naked legal title as trustee for his wife. Courts will not enforce a resulting trust after a great length of time or laches on the part of the supposed *cestui que. trust*. *Pusey* v. *Gardner*, 21 W. Va. 470. Lapse of time, when not a statutory bar, operates in equity as evidence of assent, acquiescence or waiver. Same case, point 7 of syllabus.

In *Troll* v. *Carter*, 15 W. Va. 582, Judge GREEN says: "So too all the authorities agree, that an equitable claim of any sort and especially one, which depends on parol testimony only, will not be recognized after great lapse of time, during which it has been ignored, where no satisfactory reason can be assigned for not setting up the claim sooner. And this is more especially true, when the equitable claim is of a character, which required clear and explicit evidence to sustain it; such lapse of time itself rendering the evidence, which might otherwise have been regarded as sufficiently clear and explicit, unsatisfactory."

The fact, that defendant's husband being indebted and knowing the land to be in danger from his debts should let the matter lie, and die without executing a deed to satisfy this call upon his conscience, is a circumstance against the claim she now sets up. On the facts developed by the evidence the case is not strong enough. The court of Virginia in *Miller* v. *Blose*, 30 Gratt. 751, says that "the evidence to establish such a claim, in the face of absolute deeds so long of record, must be very clear and explicit, and such as to leave no doubt as to the character of the transaction." The facts must be proved with great clearness and certainty. 1 Perry Trusts, § 137. Judge GREEN in *Troll* v. *Carter*, 15 W. Va. 582, says that, "if the statute of frauds in any case be inapplicable, and a trust of land be permitted to be established by parol evidence, to establish such a trust the evidence must be full, clear and satisfactory." See *Bank* v. *Carrington*, 7 Leigh, 556.

Again, a resulting trust must arise at the time of the execution of the conveyance; for a resulting trust can not arise by after-agreement, by matter *ex post facto*. Judge SNYDER's opinion in *Murry* v. *Sell*, 23 W. Va. 480; 1 Perry Trusts, § 133. Payment before or at the time of the purchase is indispensable. A subsequent payment will not by relation attach a trust to the original purchase. *Miller* v. *Blose*, 30 Gratt. 751. As the money paid in 1860 was under the law the husband's, as the wife's then existing estate when realized would be his, no trust could then arise from its payment. Subsequent payment of other money, though her separate estate, years after the legal title had been conveyed to him,

can not raise a trust. H. J. Samuels, commissioner, who sold and conveyed the land to Turley, as a witness says nothing of any declaration of Turley at the time, that he was buying for his wife. He does say, that he heard Turley say, he expected the purchase-money to come out of proceeds going to Agnes Turley and her sister out of the Dundas estate, so far as it would go towards paying. But the payment of some of the money for the land was long deferred, and this declaration may have been made long after the conveyance, and would not necessarily imply that he was buying for her in the face of the fact, that he bought in his own name, especially as this money in 1860 would not be her separate estate but his, when realized. It expressed the mere expectation, that he could get the money to pay from that source. The money paid in 1860 was the husband's *ex jure mariti*, not hers, so far as is disclosed.

It is to be noted, that Mrs. Turley in evidence does not say, there was an agreement or understanding between her and her husband at the time of the purchase, that he should buy for her. She merely says he paid for it with her money and called it her land. She realized some $2,200.00 from another uncle, and in 1870 $1,200.00 of it was paid on her husband's debt for this land. When asked, if she knew, whether any of this money was applied to the land, she replied that she did not, but so understood. Only $1,200.00 of this money is proven to have gone on the land, and that as far back as 1870. This proof is not the clear explicit proof leaving no doubt, required in such secret trusts as this. It might well be said, that as to all these moneys a gift to her husband was intended; that she neither contracted for nor expected its return, or that land should be bought in her name; and that it is only when the storm has come, the shelter of this trust is sought. That she made no effort in this direction for so long, and only when creditors came against the land, strongly confirms this view.

In *McGinnis* v. *Curry*, 13 W. Va. 29, this Court presumed a gift from wife to husband and denied a trust, though it was clear that the proceeds of her land had paid for the land in question. This transaction is between husband and wife and, if sustained, defeats the honest debts of Turley after an

ownership of twenty five years on evidence almost solely of the wife, and that not very explicit; and the leaning of this Court in *McGinnis* v. *Curry* and in a series of decisions on kindred questions in contests between the wife and the husband's creditors is towards creditors, to the extent at least of requiring full proof of all the elements to bring the case to the standard of exemption. It is well that the law on this matter should be definitely understood. If any one is to suffer, it should be the negligent *cestui que trust* rather than just creditors.

Counsel for appellee relies on the fact, that there was no reply in writing to Agnes Turley's answer, claiming that for that reason no proof of its allegations is necessary. If it required such reply of the plaintiff complaining of this decree, certainly this position would be correct. As to the heirs of Turley Agnes Turley's answer alleging new matter calling for affirmative relief from them, alleging that her husband purchased for her and was her trustee, and praying specific execution by them of the trust by a conveyance to her, demanded such reply. But as to Smith it was simply matter of defence of the land against his debts. It asked no relief as against him,—simply sought a dismissal of his bill; and, while the answer does contain new matter, that matter calls for no relief against him. To fall under sections 35 and 36 of ch. 25 of the Code, the answer must not only contain new matter, (many answers contain that,) but that matter must call for affirmative relief against the party, from whom such reply in writing is demanded.

In *Moore* v. *Wheeler*, 10 W. Va. 42, it is held, that an answer alleging new matter for affirmative relief in the meaning of said statute was intended to be simply in lieu of a cross-bill, and not to make any other change in practice. A cross-bill implies a pleading by a defendant against the plaintiff or other defendants or both to bring into the cause and enforce new matter not merely in bar. The statute makes now one pleading perform the two functions of an answer in bar and a cross-bill for affirmative relief; and logically why may not the answer be divisible as to matter and parties, when some of the matter is only in bar of plaintiff's demand, or the matter is in bar of said demand as to some of the defendants only,

thus calling for a reply in writing as to some of the matter only or from some of the defendants, and only a general replication as to the other matter or from the other defendants? We think the answer did not call for a reply in writing from Smith.

As to the error assigned, that Turley's personal representative was not a party, had debts been decreed against his estate and the land, his heirs might assign such error, but, as the bill was dismissed without such decree, it seems the plaintiff can not sustain this assignment.

The appellant assigns as error, that Mrs. Turley's evidence is incompetent as to declarations of her husband. If by this is meant, that his declarations, however proven, are inadmissible under all circumstances, the position is untenable. Admissions of the nominal purchaser and grantee in the deed are admissible. 1 Perry Trusts, § 137. Especially admissions when not in debt, and long before the controversy with creditors. *McGinnis* v. *Curry*, 13 W. Va. 68. But if it is meant, that she is incompetent to testify as to transactions between her and her husband or his declarations, the assignment is well made under sec. 23, ch. 130, Code, which renders a party incompetent to give evidence of such transactions and communications with a deceased person against parties claiming as his heirs. True, that statute does not expressly exclude such party from giving evidence against creditors of the deceased; but creditors claiming under heirs as to lands in a sense stand in their shoes. If Mrs. Turley establishes the trust, she overthrows the title of the heirs and also the relief of the creditors as a consequence. Giving evidence against the heirs she gives evidence against the creditors, and as to the heirs she is incompetent under the letter of the statute, and as to the creditors incompetent under its spirit. Otherwise her children willing to let her sustain her claim might make no exception and thus defeat creditors, if said creditors could not except for incompetency. This position is sustained by Judge SNYDER in *Martin* v. *Smith*, 25 W. Va. 587.

This Court is required to render such decree as the Circuit Court should have rendered, but in the absence of the personal representative of Elijah Turley that court could

not have decreed debts against his estate, and consequently this Court can not, and the cause must be remanded without further decree here. *Hill* v. *Proctor*, 10 W. Va. 78.

Therefore the decree of the Circuit Court of Cabell county pronounced in this cause on the 14th day of December, 1885, must be reversed with cost to the appellant; and the cause is remanded to said Circuit Court with direction to require the plaintiff to make said personal representative a defendant by amended bill, and to proceed further in the cause according to the principles herein indicated and principles governing courts of equity.

REVERSED. REMANDED.