# CHARLESTON.

## DECK *et al. v.* TABLER *et al.*

Submitted September 5, 1895—Decided Nov. 29, 1895.

1. RESULTING TRUST.

   Where land is purchased and paid for by one person, and the conveyance is taken to another, the law will raise by implication a trust for the benefit of the former.

2. RESULTING TRUST—HUSBAND AND WIFE—PRESUMPTION OF GIFT.

   But if the person in whose name the conveyance is taken is the wife of the person who pays the purchase money, the *prima facie* presumption is that a gift was intended, and in such case no resulting trust will arise.

3. RESULTING TRUST—INTENTION OF PARTIES.

   The presumption in each case is one of fact, as to intention, and not of law, and may be rebutted by competent evidence, written or verbal, direct or circumstantial.

4. RESULTING TRUST—DECLARATION OF PARTIES—GIFT.

   The acts and declarations of the husband which accompany the transaction, so as to be a part of the *res gestæ*, are admissible to show his intention in making the gift or settlement, and to raise a resulting trust.

5. RESULTING TRUST—PRESUMPTION OF GIFT.

   But the *prima facie* presumption that a gift was intended has become a well established rule of property, and requires, to rebut it, clear and convincing evidence; otherwise, the ownership will be left where the conveyance has placed it.

   A case in which these principles are discussed and applied.

N. D. BAKER, JR. for appellants, cited 10 W. Va. 87; 12 W. Va. 541, 552; 13 W. Va. 29, 64-5; 21 W. Va. 470; 22 W. Va. 1, 348; 23 W. Va. 480, 481; 24 W. Va. 299; 30 W. Va. 248; 31 W. Va. 810, 865, 869; 32 W. Va. 14; 1 Lead. Cas. Eq. 165, 203, 216; 1 Johns. Ch. 582; 2 Johns. Ch. 405, 410; 7 Leigh (Va.) 566, 575-6, 582; 82 Va. 352; 11 Johns. 91; 14 Ala. 777; 66 Ala. 55; 19 Wend. 414; 5 Ohio, 255, 256; 16 Tex. 314, 321, 322, 323; 10 Hump. 9, 12, 13; 8 Ind. 121; 25 Iowa, 43; 2 Williams (Vt.) 638; 40 Ark. 62; 30 N. H. 354.

FLICK & WESTENHAVER for appellees, cited Perry, Trusts, §§ 133, 137, 147, 153-4, 167; 23 W. Va. 475; 1 Lead. Cas. Eq. 206, 216; 222, 223-4; 2 Vern. 264; 30 W. Va. 248; 31 W. Va. 865, 869; 22 S. E. Rep. 172; 22 Gratt. 573; 12 W. Va. 541; 30 Gratt. 744; Pom. Eq. Juris. § 1040; 33 W. Va. 870; 22 W. Va. 541; 12 Leigh, 427; 2 Ran. 384; 27 W. Va. 207 pt. 4 syl.

HOLT, PRESIDENT:

On appeal from a decree entered by the Circuit Court of Berkeley county, on 23d day of January, 1895, holding that there was no resulting trust to the husband, Abraham G. Tabler, in a house and lot which he bought and paid for, but had conveyed to his wife. From this decree the defendants, Overton C. Tabler and others, heirs of Abraham Tabler, appealed.

- In 1878, Abraham C. Tabler was married to Susan E. Deck. Both were well up in years, and neither ever had any children. She had nothing. He was fairly well to do. Shortly after, *viz*, on 1st day of August, 1878, the husband bought of Joseph Baker Kearfoot, for the sum of one thousand five hundred dollars, a house and lot on Burke street, in the town of Martinsburg, and caused Kearfoot and wife, by deed of that date, to convey the same to his wife. On the 1st day of April, 1887, husband and wife, by deed of that date, sold and conveyed this property to Solomon Henkle for the sum of two thousand four hundred and fifty dollars. With one thousand nine hundred dollars of this money the wife bought the house and lot on King street, which was conveyed to her by James H. Wolf, as executor of the will of John M. Wolf, deceased, by deed dated the 15th day of February, 1887. This is the house and lot in controversy.

Susan Tabler, the wife, died in May, 1891, leaving no issue and no will. The husband, Abraham C. Tabler, continued to occupy the King street house until about the 27th day of May, 1894, when he departed this life leaving a will. The heirs at law of the wife were the plaintiffs Edward C. Deck and Frederick A. Deck, her brothers of the whole blood, and the plaintiffs William M. Deck, Sarah R. La-

mar, a brother and sister of the half blood, and certain children and grandchildren of her half-brother, John B. Deck, who died in 1877. By deed dated the 19th day of August, 1892, the half-brother, William M. Deck, and the half-sister, Mrs. Lamar, sold and conveyed all their interest in the real estate in question to the surviving husband. In the will of Abraham C. Tabler there was, *inter alia*, the following: "From the proceeds of the interest that I have or may have in the house and lot on King street, in Martinsburg, it is my will that the bill of Dr. N. D. Baker, due for services rendered my wife during her lifetime, be paid, and that the tombstones placed at her grave be paid out of the same fund if possible, and that the remaining portion, whatever it may be, be paid to the use and benefit of the trustees of the Trinity Episcopal Church of Martinsburg, W. Va., to use the same for the use and benefit of the church as they may wish."

This suit was brought to partition the property by selling the same and dividing the proceeds. The trustees of the church do not answer, and do not seem to set up any claim, leaving it to go, whatever the interest may be, to the heirs at law. The infant defendants answer by guardian *ad litem.* The adult defendants, the heirs at law of the husband, answer and say that the wife never had the beneficial ownership of the house and lot of which she died seised; that the husband bought and paid for the house and lot on Burke street; that he consented to the sale thereof to Henkle; and joined in the deed of conveyance; that the purchase money paid therefor to his wife was a trust fund remaining in her hands for the benefit of the husband, that as such trustee she bought with the trust money the house and lot on King street, taking the conveyance of the legal title to herself, but having no beneficial ownership; but at all times held the same as trustee for the use of her husband; that at the death of the wife, the legal title vested in her heirs at law as trustees for the husband; and that he occupied it as such beneficial owner.

Where land is purchased and paid for by one person, and the conveyance is taken to another, the law will imply a trust for the benefit of the former, and such purchase and

payment may be proved by parol. *Bank* v. *Carrington*, (1836) 7 Leigh, 566; *Smith* v. *Patton*, 12 W. Va. 541; *McGinnis* v. *Curry*, 13 W. Va. 29-64; *Murry* v. *Sell*, 23 W. Va. 475. It is raised by law, from the presumed intention of the parties, and the natural equity, that he who furnishes the means to acquire the property shall enjoy its benefits. *Jackson* v. *Jackson*, 91 U. S. 122, 125. It goes in strict analogy to the rule of the common-law that, where a feoffment was made without consideration, the use resulted to the feoffor. But it does not arise where there is an obligation, legal or moral, to provide for the grantee, as husband for wife, or parent for child; for in such case there arises the contrary presumption of a gift or advancement for the benefit of the grantee. *Dyer* v. *Dyer* (1788) 2 Cox, Ch. 92, 1 White & T. Lead. Cas. Eq. 314; *Lockhard* v. *Beckley* (1877) 10 W. Va. 87. But extrinsic evidence, either written or parol, is admissible on behalf of the father (or husband) to rebut this presumption, and to show that a trust results in his favor. *McClintock* v. *Loisseau*, 31 W. Va. 865, 869 (8 S. E. 612). The presumption is one of fact and not of law, and may be rebutted by evidence or circumstances. *Hamilton* v. *Steele*, (1883) 22 W. Va. 348, 354. See *Pusey* v. *Gardner*, 21 W. Va. 469; *Sheffer* v. *Fetty*, 30 W. Va. 248 (4 S. E. 278); *Heiskell* v. *Trout*, 31 W. Va. 810 (8 S. E. 557); *Smith* v. *Turley*, 32 W. Va. 14 (9 S. E. 46). See, also, Thornt. Gifts, § 244 *et seq.;* 10 Am. & Eng. Enc. Law, 5 *et seq.; Neil* v. *Keese*, (1849) 5 Tex. 23 (51 Am. Dec. 746, 751, note); Hill, Trustees, p. 144; 1 Lewin, Trusts, 143; 1 Perry, Trusts, § 143; Flint, Trusts, § 63; *Reynolds* v. *Sumner* (Ill. Sup.; Oct. 1888) (14 N. E. 661); *Riley* v. *Martinelli*, 97 Cal. 575 (32 Pac. 579.)

The presumption of gift or advancement being a question of the purchaser's intention, it may be repelled by evidence; but by what kind of evidence? This presumption has become a well established rule of property, and is not to be frittered away by mere refinements. *Dyer* v. *Dyer*, 1 White & T. Lead. Cas. Eq. 314, 319; *Finch* v. *Finch*, 15 Ves. 43, 50. Evidence antecedent to or contemporaneous with or immediately after the purchase, so as to form a part of the same transaction, may be admitted to rebut it. Subsequent declarations, except so far as they prove intentions

at the time, are inadmissible, for the question is not what did the wife, but what did the husband, mean by the purchase and conveyance? See *Fowkes* v. *Pascoe*, L. R. 10 Ch. 343; Brett, Cas. Mod. Eq. 271, 275. See Thornt. Gifts, § 245, and cases in note 2; *Id.* § 246. You have only to prove that the one advancing the money is the husband and the one receiving the conveyance is the wife. The good consideration exists, and being a discharge of the moral obligation to support and provide for the wife, then the presumption arises, so well established as to be a landmark— a rule of property. Hence, the evidence to rebut it must be of as explicit a nature as is required to establish the resulting trust. But where there is once convincing evidence to rebut the presumption, we can no longer treat it as a presumption raised by the law, but must go into the character and sufficiency of the evidence *pro* and *con*, as establishing his intention in that behalf at the time as a question of fact.

Bearing in mind this rule, let us look into the testimony this record presents. The greater part of it—almost all of it—is made up of conversations of the husband after the death of the wife. He said he paid for it; his wife did not have five dollars when he married her; no one owned the house but himself, *etc.*—all of which is incompetent, and when taken into consideration has no convincing power that when the conveyance was made he then intended her to take and hold in trust for himself. We start with the concession that the husband paid the purchase money. That fact needs no further proof. There is one witness, however, who gives us what was said at the time, as tending to explain the meaning and purpose of what was done. I mean Mr. Kearfoot, from whom the Burke street property was bought, and evidently the friend and trusted adviser of both husband and wife. He says that Tabler, the husband, had a store at the time—was a retail merchant of some sort. "When I went to make the deed, he said the deed was to be made to Mrs. Tabler. Mrs. Tabler told me the deed was to be made to her; that Mr. Tabler made the deed in her name because he had a store at the time, and was fearful that something might transpire that they would

lose their property. The deed was to be made to her, and she was to make a will by which it was to go to the survivor; and she told me afterwards that she had made a will, as above stated. I was very intimate with Mr. and Mrs. Tabler. After she sold the property on Burke street, she got me to purchase for her the property on King street, I having first looked at the property for her with a view to making the purchase. I paid about one thousand and nine hundred dollars for the property. That was in the year 1886. After the King street property was purchased, she told me that she wished me to write her will, as she had destroyed the first one after selling the Burke street property. As to how she wanted it written, she mentioned but one item she wanted put in it. That was she wished Dr. Baker to have about four hundred dollars—that is three hundred or four hundred dollars. What else she was intending to do with it she never said. She wished me to do it some time when there was no one else about the house. I went several times, but there was always somebody there. Consequently, it was never written. Mr. Tabler said that it was so fixed that in case there should be a break-up in his business they would still have a home; that the deed for the Burke street house and lot was taken in her name in order to provide against having it taken for his debts, should he fail in the business in which he was then engaged." They were both up in years, felt themselves to be growing old, and it was her wish and his, while he could, to forestall to some extent the vicissitudes of his business and increasing years by having this property conveyed to her, thus securing to her a home and for himself a shelter in old age from financial disaster, coming, as they often do come, together. This purpose, the only one then made manifest as a part of the transaction, so far from proving, tends to repel the existence of a resulting trust; for in that event both these old people would be at the mercy of his subsequent creditors—the very thing they were aiming to provide against. And as to the will—her first will, which she destroyed—the law itself gave him, as tenant by the curtesy in her land, all that she had intended to give, *viz.*, a life estate therein, if her husband survived

her.   That he had, without question or disturbance, during his life.   As to the second will, which she had in contemplation, she never went far enough in her disclosure of intention to Mr. Kearfoot to enable us to form anything more than the merest conjecture of what disposition she had then in her mind to make.   My conjecture would be that it would have been to him for life, remainder in fee to some of her own kin and not to his.   To my mind this testimony of their confidential friend tends to show, not a resulting trust to the husband, but the intention of a settlement upon the wife.   They had just been married.   He was engaged in the hazardous business of keeping a retail store of some kind, involving more or less the risk of failure.   Fearing a loss in business, the husband while yet solvent, and, may we not say, with commendable prudence, saw fit to provide a home for his wife, by settling upon her a part of his real estate.   She dealt with it and claimed it as her own during a period of fourteen years without contradiction, devised it as her own with his consent, sold and conveyed the Burke street house, he joining in the deed, used part of the proceeds for her own purposes, and invested the residue in the King street house, which she caused to be conveyed in fee simple to herself.   The rights of no creditors, prior or subsequent, are involved; and, as we have already seen, no express trust was created or assumed, and no confidence reposed in her by her husband was abused.   There is no room, anywhere in the case, as made, for treating her as a trustee *ex maleficio.*

We have been referred to four cases as identical in all material respects with the case in hand, in each of which there was held to be a resulting trust.   In *Cotton* v. *Wood* (1868) 25 Iowa, 43, the court found that the land bought by the husband was conveyed to the wife under the express parol agreement that she should convey the same to him on request.   A resulting trust can only arise by operation of law.   In *Wallace* v. *Bowen* (1856) 28 Vt. 638, the proof satisfied the court that the deed to the wife was not intended as an absolute gift.   The statement of the case shows that the deed was directed to be made to the wife under a mistake of the legal effect of such conveyance to

the wife. In *Farley* v. *Blood* (1854) 30 N. H. 354, 372, the court found the fact to be that Farley, who held the legal title as trustee, was to hold it for Mrs. Blood, the wife of the purchaser, only to furnish the wife, Mrs. Blood, a home during her life, and that it was held in trust for the husband after the death of the wife. In *Milner* v. *Freeman* (1882) 40 Ark. 62, the court held that the proof was satisfactory that Milner, the husband, did not intend an absolute gift of the land to the wife. The case was regarded as very much like *Wallace* v. *Bowen, supra*. In this case the avowed purpose of the husband in having their home conveyed to his wife was to put it beyond the reach of possible subsequent creditors, should financial shipwreck ultimately overtake him. Trusts are neither created nor implied by law to defeat the intentions of donors or settlors. They are created or implied or held to result in favor of donors or settlors in order to carry out and give effect to their true intentions, expressed or implied. *Standing* v. *Bowring*, 31 Ch. Div. 282. And the principle of law and presumption that a purchase in the name of a wife is *prima facie* a gift is not to be frittered away by mere refinements, for such presumption is a rule of property so well established as to have become a landmark, and unless it is met and repelled by evidence, full, clear, and explicit, the safe thing to do is to leave the ownership where the law has placed it.

Decree affirmed.