# CHARLESTON.

HARRIS *v.* ELLIOTT.

Submitted June 9, 1898—Decided November 19, 1898.

1. SPECIFIC PERFORMANCE—*Oral Contract—Evidence—Sale of Land.*
    The evidence must be clear, full, and free from suspicion to enable a court of equity to enforce an oral contract for the sale of land. (p. 248).

2. RESULTING TRUST—*Title—Equity—Payment.*
    To raise a resulting trust for one paying purchase money for land when title is taken in the name of another, the trust must arise from equity principles, at the moment title passes, and no subsequent payment will create it; nor will a subsequent agreement by the party holding title to hold in trust raise such trust. (p. 249).

3. RESULTING TRUST—*In Loco Parentis—Loan.*

A resulting trust will not arise in favor of one paying for land conveyed to another, if that other be wife or son or other person as to whom the one paying voluntarily places himself in *loco parentis* in the transaction. A resulting trust will not arise in favor of one paying for land conveyed to another where such payment is only a loan to such other person. (pp. 249, 250).

4. RESULTING TRUST—*Subrogation—Lien.*

Where it appears clearly that, in paying for land by one with conveyance to another, the party paying intended to make a gift or confer a benefit, no resulting trust arises in his favor. To warrant subrogation in favor of one paying a debt as surety or otherwise, the debt paid must have been a lien on the land. (p. 250).

5. SUIT TO CHARGE LAND—*Fraudulent Purchaser—Decree—Costs.*

In a suit to charge land in the hands of a fraudulent purchaser with money, he yet holding the land, that must be subjected; and there cannot be a personal decree against him for the money, though there may be for costs, if the land does not pay the money and costs. If he has sold, he may be charged with the proceeds. (p. 250).

Appeal from Circuit Court, Barbour County.

Bill by Jasper W. Harris against James B. Elliott and Creed C. Harris. From the decree, defendants appeal and J. W. Harris cross-assigns error.

*Reversed.*

SAMUEL V. WOODS, for appellant.

DAYTON & DAYTON and FRED O. BLUE, for appellee.

BRANNON, PRESIDENT:

Jasper W. Harris filed a bill in equity in the Circuit Court of Barbour County against Creed C. Harris and James B. Elliott, alleging that Elliott had sold and conveyed to one Wolf a lot in Meadowville; that Wolf sold it to Jasper W. and Creed C. Harris, and as the deed from Elliott to Wolf had been lost, Wolf and Elliott joined in conveying it to Creed C. Harris, for their joint benefit, however; that they were to pay Wolf two hundred and five dollars for the lot, of which Jasper had paid ninety-five dollars, and they executed their two joint notes for part of the balance, except about five dollars. The ninety-five dollars was paid in a note of both Harrises under an arrange-

ment with Wolf to Knotts, which was later paid by Jasper.
Jasper paid also thirty-eight dollars and forty-eight cents
on this purchase-money debt. He paid, in all, it seems,
one hundred and thirty-four dollars and seventy-six cents.
Afterwards, Creed sold and conveyed to Elliott this lot, he
paying for it by discharging a balance of purchase money
yet due him under said Harris notes, and a note for store
bill given him by Creed Harris, and some money. The
bill charged that Elliott, when he took the conveyance
from Creed Harris, knew that Jasper Harris was a joint
owner with Creed Harris, and knew of the rights of Jas-
per under his payment of part of the purchase money.
The bill also stated that some time after the conveyance to
Creed Harris from Wolf and Elliott, under which Creed
was in possession, Creed moved to Tucker County,
agreeing with Jasper that, if he would pay the balance of
purchase money due Elliott, he might have the property,
and he (Creed) would convey to Jasper all his interest
therein; that Creed surrendered possession to him, and
that Elliott knew of this oral contract when he bought of
Creed. The bill prayed that Elliott be held as trustee
holding legal title for the plaintiff, and that he be either re-
quired to convey to plaintiff, or that the lot be sold, and
out of its proceeds he be repaid what he had so paid.
A decree was pronounced, denying right to the plaintiff
to have a conveyance of the lot itself from Elliott; but a la-
ter decree declared that a trust existed in favor of Jasper
W. Harris for one hundred and eighty-three dollars and
twelve cents, to repay him what he had paid and subjecting
the lot to sale therefor, and decreeing the same as a per-
sonal decree against Creed C. Harris and Elliott. Jasper
W. Harris cross-assigns as error against him the
decision of the circuit court that he was not entitled to a
conveyance of the lot itself. The theory of the bill is that
the purchase of the lot was by the two Harrises jointly. It
is a strong circumstance against this theory that the deed
was made to Creed alone, especially as it is proven that,
when Wolf, Elliott, and the two Harrises were arranging
for the execution of the deed, Jasper distinctly directed
the deed to be made to Creed, and said he did not want the
property, had no use for it; that Creed wanted it, and he

wanted to help him, as it would make a good home for him; and that Creed had been with him a long time, and had been a good boy; that, if Creed ever got able to pay it back, it would be all right, and, if he should not, it would be all all right. This is a reasonable probability. Jasper was a man of fifty-three, of some means; Creed about twenty-one, his nephew, very poor, with a family, who had made his home at Jasper's from the age of fourteen years, and did a good deal of work for him. Other circumstances, not necessary for detail here, negative this ground for relief. Indeed Jasper himself, as a witness, when asked whether he claimed the lot under the purchase from Wolf, or under an oral contract with Creed, answered that he claimed it under the oral contract; and, further, his counsel lay their argument alone on that oral contract for a conveyance of the property.

Next, as to that oral contract: Jasper says that, some time after the deed to Creed, Creed moved from the lot to Tucker County, telling Jasper to pay the purchase money and take the property, and he would convey it to him. He never paid it all, which tends to negative this contract. But Creed denies this contract, and the proof is short and unconvincing upon it. Courts, with the statute requiring writings for contracts of sale of real estate staring them in the face, should be very slow to apply that principle, which is nothing but a judicial nullification of that statute, known as "part performance." And courts are slow to do so. If I could, I would abolish, by legislation, the doctrine of part performance, as productive of more harm, from fraud and perjury and engendering of litigation, than benefit, from its defeating fraud. Modern English judges regret its introduction into equity law. Some of our states reject it. At any rate, courts should, and do, require proof full and above suspicion before applying it. The circuit court, upon conflicting evidence, found against the plaintiff as to this claim for relief, and we cannot reverse for this cause.

Next, as to the theory expressed by the circuit court as the basis for its decree; that is, that a resulting trust exists in favor of Jasper W. Harris, not for the lot itself, but for repayment of money paid by him "into the property,"

"creating lien upon it:" There is no evidence to show that Creed Harris took title upon the trust to pay out of it this money, and therefore there is no express trust for its repayment. The theory of the circuit court does not claim this. Whether one could create a lien on land by taking title on promise to pay money to another is a question not necessary to answer. If a grantor were to convey upon such trust, likely so; but not where a borrower or debtor so promises. 2 Am. Dig. Eq., 522. The payment of the purchase money by a stranger, and title taken in the name of another, raises a trust called a "resulting" or "constructive" trust in equity in favor of that stranger, either *in toto* or *pro tanto*, according as he paid for the land in whole or in part. *Deck* v. *Tabler*, 41 W. Va., 332, (23 S. E. 721); *Currence* v. *Ward*, 43 W. Va., 368, (27 S. E. 329). But this trust is for all or part of the very land itself, not a lien for the money. *Shaffer* v. *Fetty*, 30 W. Va., 348, (4 S. E. 278). Another reason against such resulting trust is that what money Jasper paid he paid after the deed to Creed; as it is a rule that the payment which is to raise a resulting trust must be made at the very instant the title is taken by the alleged trustee, as no subsequent payment, or even oral agreement for such trust, will raise it. No subsequent application of the money of the third person to the payment of the purchase will create such trust. *Smith* v. *Turley*, 32 W. Va., 14, (9 S. E. 46); 1 Perry, Trusts, §§ 126, 133. Another fact against this trust is that, as above stated, Jasper declared, when the deed to Creed was agreed upon, that it was to be made to Creed, and he (Jasper) would help him to pay for the land, as Creed had lived at his home, and had been a good boy, and, if he ever got able, he could pay it back, and, if not, it would be all right. Creed had come to Jasper's house when a small boy, and lived with and worked for the latter, and Jasper was as a parent, being his uncle. When one pays for land, and the title is made to a stranger, the presumption is that he who paid intended to own; but if the person invested with title is a wife, son, or near relative, or one to whom the purchaser has placed himself *in loco parentis*, there is no resulting trust. Creed was but a nephew to Jasper, and I concede that such relationship

would not alone repel a trust, as would that of a wife or child; but it is the particular circumstances of this case that make such relationship negative a trust, as Jasper's having largely raised Creed, and his declarations and his directing the deed to be made to Creed, without any other explanation of not himself taking an interest by the deed, and his declaration that he did not need the land, but wanted it for a home for Creed, show that he placed himself in the place of parent to Creed, and intended to confer a benefit, not to create a trust for himself. All the circumstances in law repel a trust, since a trust, being based on a mere presumption that the one paying for property intended to own it, may be repelled by circumstances showing a contrary intent. 1 Perry, Trusts, §§ 139, 140, 144; *Deck* v. *Tabler*, 41 W. Va., 332, (23 S. E. 721). When once it appears, as it does clearly in this case, that no resulting trust was intended at the time, but that a benefit for a relative was designed, the party cannot afterwards recant his generosity and plead a trust; for, even if the donee were afterwards to admit such trust,—nay, admit it in writing,—a court would not enforce, without fresh consideration of value. 1 Perry, Trusts, § 140. Say that Jasper intended a loan; then he must treat his payment as a personal loan. It is no trust in law. 1 Perry, Trusts, § 133. I have called this payment a gift to help a needy, poor relative. If Jasper did not owe Creed, we can fairly treat it so. But the truth is Jasper owed Creed for work, as the evidence shows; and, if so, Jasper was only paying a debt, not raising a trust. Many circumstances repel a trust. It must not be thought that Jasper can get relief on the idea of subrogation, as having paid purchase money under joint notes given by him and Creed, for no lien was retained therefor. Subrogation only places the party paying in the shoes of the creditor,—gives him the creditor's rights; but if there is no lien, there is no subrogation. I cannot find any warrant for the decree.

The decree is erroneous for another reason. It is a personal decree against Creed Harris and Elliott for the money paid by Jasper Harris. If even Elliott acquired the property from Creed in fraud of Jasper's rights, Jasper could look to nothing but that on which his claim

rested,—the property. You could subject that, and Elliott could relieve it by payment; but you must give him right to elect to yield the property instead of paying, and not put a debt on him he never agreed to pay. Had he sold the property, and pocketed its proceeds, you could follow the proceed to his pockets, not otherwise. *Shoe Co.* v. *Haught*, 41 W. Va., 275, (23 S. E. 553); *Ringold* v. *Suiter*, 35 W. Va., 186, (13 S. E. 46); *Hinton* v. *Ellis*, 27 W. Va., 422.

*Reversed and Bill Dismissed.*