# CHARLESTON

CHEUVRONT v. HORNER et al.

Submitted June 6, 1907.   Decided November 12, 1907.

1. JUDGES—*Disqualification.*

   To disqualify a judge from hearing a cause, because of his interest therein, it must appear that such interest is in the subject matter of the cause, and not merely in a legal question involved therein.  (p. 481.)

2. JURY—*Right to Jury Trial—Fraudulent Conveyances.*

   The statute, section 2 of chapter 133 of the Code, giving a creditor right to attack a fraudulent conveyance before judgment on his claim, does not deny right of trial by jury, since such suit as therein provided for is based upon fraud, and a court of equity has jurisdiction of the subject matter of the suit.  (p. 481.)

3. PRINCIPAL AND AGENT—*Money Paid to Agent—Recovery.*

   If money has been paid to an agent for the use of his principal, the legality of the action of which it is the fruit or with which it was connected does not affect the right of the principal to recover it.  (p. 483.)

4. CONTRACTS—*Parties in Pari Delicto.*

   The maxim *in pari delicto potior est conditio defendentis* applies only as between the immediate parties to an illegal contract, and therefore does not govern where the suit is by one of such parties to recover money received by a third party in respect of the illegal contract.  (p. 484.)

5. TRUST—*Evidence to Establish.*

   The uncorroborated testimony of husband and wife is insufficient to establish an express trust in favor of the wife in property purchased in the name of the husband, against a creditor of the husband seeking to subject such property to the payment of his debt.  (p. 484.)

Appeal from Circuit Court, Doddridge County.

Bill by Joseph Cheuvront against William J. Horner and others.   Decree for plaintiff, and defendants William J. Horner and Maggie Horner appeal.

*Affirmed.*

J. V. BLAIR, for appellants.
MILLARD F. SNIDER, for appellee.

ROBINSON, JUDGE:

In the circuit court of Doddridge county, at the October Rules, 1904, Joseph Cheuvront instituted this suit in chancery, presumably under section 2, chapter 133 of the Code, for the purpose of enforcing a claim against William J. Horner, and in pursuance of such object to set aside and cancel, as made in fraud of his rights as a creditor of said Horner, certain transfers of real estate and personal property made by said Horner to to his wife, Maggie Horner.

It may be proper to make reference to the opinion of this Court in the case of *Cheuvront* v. *Cheuvront*, 54 W. Va. 171, for a statement of the facts explaining the source of this litigation. It is useless for us to repeat them at length here. To a great extent, in the view we take of this case, they have nothing to do with it.

It is there shown, as it is shown in this suit, that Joseph Cheuvront on the 30th day of October, 1899, placed in the hands of William J. Horner the sum of $750.00 with which to compromise a certain divorce suit then pending between said Joseph Cheuvront and his wife, Elizabeth Cheuvront, and took his receipt for such sum, in which receipt there are certain stipulations hereinafter referred to; that said Horner went to Parkersburg, where the said Elizabeth resided, and where his wife then also resided, it being shown that there was intimacy between these two women, taking with him a contract which had been prepared by the attorney of Joseph Cheuvront, and which affected materially the rights of the wife in her husband's property, and, to use the language then employed by the parties, compromised said divorce suit; and that the said Elizabeth was induced by the said Horner and his wife to execute the same. This contract expressed a consideration of $750.00, but only $400.00 of such sum so furnished him by Joseph Cheuvront was paid Elizabeth Cheuvront by Horner, and he retained from the $750.00, the residue of $350.00, less $5.00 paid to the notary for taking the acknowledgment, and less the further sum of $18.00 afterwards paid by Horner on certain costs of said divorce suit. Subsequently, at the suit of said Elizabeth, the contract so obtained was set aside and annulled by a decree of the

circuit court of Harrison county, which was affirmed upon appeal to this Court, reported as aforesaid, as having been obtained by fraud upon the said Elizabeth Cheuvront.

Thereupon, after the affirmance of said decree, this suit was instituted to recover back the money so placed in the hands of said Horner, and to recover the costs and expenses to which Joseph Cheuvront had been put in the suit to set aside and annul said contract. In that suit, Joseph Cheuvront maintained, as he does in this suit, that whatever fraud was committed in the procurement of the execution of said contract from the said Elizabeth was the act of the said Horner and wife, and not his, and that Horner was only authorized by him to pay her the full sum entrusted to his hands for the purpose aforesaid, in case she would execute the contract, and was not authorized by him to make any other representations. Certain it is, however, that said· Horners not only deceived the said Elizabeth as to the amount for which the contract called, but to induce her to sign same represented that her husband would immediately come and reside with her again. In fact, there is a long story connected with all this, enough of which is shown in said former opinion for the purposes of this case, and really little of which pertains to the real questions now before this Court. Joseph Cheuvront was held by the adjudication in the suit to set aside said contract to be bound by the act of Horner, who was held to be his agent in the transactions aforesaid, and further than setting aside said contract, the Court refused to decree to him the return of the $400.00 paid to his wife as aforesaid, or in legal language, to place the parties in *statu quo.* The reasons for this are clearly stated by the learned judge of this Court through whom that opinion was handed down.

In the plaintiff's bill, his claim is founded upon the receipt given him by Horner for the $750.00, in which writing it is expressed that the said sum is to be used in such compromise, and to be paid Elizabeth Cheuvront in case she signed the contract, and in which Horner guaranteed to return to Joseph Cheuvront said sum "in case same should be lost or any accident to same, if not paid to her upon said compromise." The bill also sets up the fact that

plaintiff had prior to the filing of the bill instituted an action at law in said circuit court of Doddridge county upon his aforesaid claim, for one thousand dollars, in *assumpsit*, against said Horner, and claims that he had office judgment which became final and was erroneously set aside. It appears, however, that plaintiff's contention in this particular is not well founded, and that he must rest upon his right to recover in this suit. In fact, his counsel has, we infer, abandoned that contention. The plaintiff's bill also exhibits the record and opinion in said former case, which are asked to be read in connection therewith. This fact it is important to note here, as appellants insist that it is thereby disclosed that the money which Horner received from Cheuvront as aforesaid and now demanded back was paid Horner for an illegal purpose and that therefore the law gives no action therefor.

The bill further charges that after the adjournment of the term at which said office judgment was set aside, the said Horner, on the 11th day of August, 1904, with intent to hinder, delay and defraud plaintiff from collecting his debt, by deed of that date, conveyed to M. K. Horner, trustee, a certain lot or parcel of ground in the town of West Union, on which Horner, his wife and family resided, and a drug store in said town and all fixtures and appurtenances connected therewith and the soda fountain therein, for a pretended consideration, and that in furtherance of his purpose to hinder, delay and defraud plaintiff, the said M. K. Horner, trustee, on the next day conveyed the whole of said property as described in said deed to Maggie Horner, the wife of the said William J. Horner. The said M. K. Horner, trustee, is shown to be the brother of William J. Horner. The bill is distinct and definite in its averments of facts constituting a fraud upon the creditors of William J. Horner, by the transfers of the property aforesaid, and after making proper averments relative to a vendor's lien which rested upon the property, prays for a decree against William J. Horner, requiring him to pay complainant the debt in question, and that the conveyances aforesaid be set aside and declared null and void as to plaintiff's claim, and the said property sold to satisfy the debt, and for general relief.

A demurrer to the bill was interposed on behalf of the said William J. Horner and Maggie Horner, and as ground thereof they assigned want of equity jurisdiction, multifariousness, want of sufficient averments and omissions. The demurrer was overruled and a day given to answer. William J. Horner and Maggie Horner filed their joint and separate answer to the bill, and such answer ·denies the claim of plaintiff and the charges of fraud in the transfers of the property aforesaid by Horner to his wife. It admits that the $350.00, less the two small deductions, was retained by Horner, and claims the same as compensation for his services in getting said contract signed. It denies the right of recovery also, in effect upon the maxim *in pari delicto potior est conditio defendentis.* The answer is definite and concise in its averments in meeting the allegations of the plaintiff's bill, and particularly in resistance of the charges of fraudulent conveyances, averring that the property had been really purchased by said Maggie Horner and the cash payment actually paid by her, from her separate estate, that the deed was made to ·her husband with the understanding and agreement between her and him that he would secure her therein, and in consideration of her funds already applied thereon, and other money he had borrowed from her, that he agreed to convey and have conveyed to her in legal form the property aforesaid, that he had neglected from time to time to do this, until she insisted on consummating the agreement, which respondents say was done by the said conveyances charged by the complainant to be fraudulent.

There was a general replication to the answer, and testimony taken, the greater part of which relates to the question of whether or not the conveyances from Horner to his wife through the instrumentality of his brother as trustee are fraudulent. Upon the hearing of the cause, the court entered a decree, on the 18th day of September, 1905, finding that the plaintiff is entitled to recover from the defendant William J. Horner the sum of $350.00, less the $18.00 paid as hereinbefore mentioned, with interest from the 22d day of November, 1899, aggregating the sum of $447.90, and that the conveyances aforesaid and each of them should be set·

aside in so far as they affect said debt so found; and thereupon decreed that the said Horner should pay to the said plaintiff the aforesaid sum, with interest until paid, and the costs of suit, and fixed the same as a lien upon the real estate described in the bill, second in priority to a vendor's lien in favor of Lewis Maxwell by said decree properly ascertained and fixed, and further adjudged and decreed that the conveyances aforesaid were fraudulent, null and void in so far as they affect the debt decreed to plaintiff, and after giving a day to the said Horner, or some one for him, to make payment, directed a sale in case default should be made.

It is assigned that the court erred in hearing and deciding the cause, because of such interest of the judge therein as to disqualify him. It is claimed that one of the depositions in the suit to set aside and cancel said contract between Joseph Cheuvront and Elizabeth Cheuvront discloses that the judge of said court prior to his taking office had been one of a firm of counsel for the said Elizabeth Cheuvront in the divorce suit, which was undertaken to be compromised as hereinbefore stated; and this is the only charge of disqualification made. There is nothing in the record to show that the party there mentioned as such counsel was at the hearing of this cause the same person as the judge of the circuit court, and such assignment of error is therefore groundless. But assuming such to have been the fact, and the point properly presented, it comes within no rule that would disqualify a judge. 23 Cyc. 586. Works on Courts and their Jurisdiction, page 396. To disqualify, the interest of the judge must be a pecuniary one; it must be in the subject matter of the cause, and not merely in a legal question therein involved. *Forest Coal Company* v. *Doolittle, Judge*, 54 W. Va. 210.

It is also insisted that the demurrer to the bill should have been sustained, but we find this bill to be an ordinary one for the equitable remedy given by section 2, chapter 133, of the Code, and that it is amply sufficient in its averments in the premises. There is no denial of the right of trial by jury in a suit of this character, as insisted by appellants, as it is the charge of fraud that gives such suit life.

and being.   It is based upon fraud, a well-recognized ground
of equity jurisdiction.   *Broderick* v. *Broderick*, 28 W. Va.
378; *Cecil* v. *Clark*, 44 W. Va. 659.   The allegations of
fraudulent conveyances for the purpose of hindering and
delaying plaintiff in the collection of his debt give plaintiff
the right to maintain this suit, before judgment on his
claim, provided he proves the allegations of his bill.   Hogg's
Eq. Prin., section 183; *Tufts* v. *Pickering*, 28 W. Va. 330;
*Hoffman* v. *Fleming*, 43 W. Va. 762.   If there is any merit
in the demurrer, it is upon the alleged ground that the bill
shows plaintiff was *in pari delicto* with the defendant.   But
as this question arises not only upon the demurrer, but as
well upon the hearing of the cause, the defendants insisting
in their answer that the plaintiff is in equal fraud with Hor-
ner, we may here dispose of it upon the whole.   The question
of whether or not plaintiff is inhibited from recovering this
money under the maxim hereinbefore stated is important and
controlling.

A marked distinction must be made between this case and
the usual ones where the doctrine of *in pari delicto* arises.
The money here is in a situation where the plaintiff may
seek to recover it without the invocation of the aid of the
illegal contract mentioned and relied upon by appellants in
their contention on this point.   Whenever a case can be
made without invoking the aid of the illegal contract, the
plaintiff is entitled to recover.   1 Bigelow on Fraud, page
206; *Clark, Harrison & Co.* v. *Brown*, 77 Ga. 606, (4 Am.
St. Rep. 98).   In this instance Joseph Cheuvront is not com-
pelled to invoke the contract with Elizabeth Cheuvront which
has been declared to be illegal to assist him in making out
a case for the recovery of the money from Horner which
by Horner's own conduct never left his hands and never
had at all to do with the illegal contract.   That contract is
wholly collateral and immaterial, in fact, to this suit for the
recovery of the money from him, and cannot be invoked by
this plaintiff to assist him in a recovery from Horner, since
Horner is no party to such contract.   The plaintiff may
rely on the receipt alone, as he does.   It is a contract
with Horner.   The record discloses no illegality as to
it, or suggestion of illegality in connection with it at
the time it was given.   Were there no receipt, he

could rely on the implied promise existing under such cir-
cumstances.

But there are other principles, those belonging directly to
the law relating to principal and agent, which relationship
the former decision found between Cheuvront and Horner
in the transactions relative to the said illegal contract, which
deny to Horner a right to resist plaintiff's claim for this
money upon the ground that it was placed in his hands to
be used for an illegal purpose. ''The broad rule has been
laid down that when money or property is delivered by a
principal to his agent for an illegal purpose or for the pur-
pose of carrying into execution an illegal contract, the
agent cannot set up such illegal object to prevent a recovery
by the principal from the agent of such money or property,
so long as it remains in his hands.'' 15 Am. & Eng. Enc.
2 Ed. 1009. In *Hertzler* v. *Geigley*, 196 Pa. St. 419, (79
Am. St. Rep. 724), it is held: ''The law cannot enforce an
illegal contract, but if the servant or agent of another has,
in the prosecution of an unlawful enterprise for his master,
received money or other property belonging to the master,
he is bound to turn it over to him, and cannot shield him-
self from liability therefor upon the ground of the illegality
of the original transaction.'' This is supported by the deci-
sion in *Berkshire* v. *Evans*, 4 Leigh 223. The contract of
the agent to pay the money to his principal grows out of
the receipt of the money for his principal, and is not im-
mediately connected with the illegal transaction. Story
on Agency, section 347. If money has been paid to an
agent for the use of his principal, the legality of the action
of which it is the fruit or with which it was connected does
not affect the right of the principal to recover it. The
agent's liability arises solely from the fact of having re-
ceived money for another's use. Dunlap's Paley's Agency,
62; Wood on Master and Servant, section 202; Mechem on
Agency, section 526; 1 Am. & Eng. Enc., 2 Ed. 1088, Clark
& Skyles on Agency, section 428.

And closely related to the foregoing considerations is
the doctrine in equity that a court will not go outside of
the real subject matter of the controversy and make its in-
terference to depend upon the character or conduct of the
moving party in no way affecting the right which he asserts

against the defendant. Pomeroy's Equity Jurisprudence, 3rd Ed. section 399.

The doctrine of *in pari delicto*, as founded on said maxim, is not applicable to this case, since it applies only as between the immediate parties to an illegal contract, and therefore does not govern where the suit is by one of such parties to recover money received by a third party in respect of the illegal contract. Broom Leg. Max. 7th Am. Ed. 723; *Kiewert* v. *Rindskopf*, 46 Wis. 481, (32 Am. Rep. 731).

Whose money is it? Clearly under the terms of said receipt it was Cheuvront's money until paid to the said Elizabeth Cheuvront pursuant to the stipulations in that writing. Then it narrows down to this: Has Horner shown himself to be entitled, as he claims, to retain it for compensation for his services in securing the illegal contract? This question of fact was one for the circuit court, and its finding that he was not so entitled is not here to be disturbed, since the evidence justified it, and especially since it appears just to deny such an extortionate claim for his services for such a fraudulent transaction as Horner carried out in the absence of Cheuvront and without any defined proof in the record that Cheuvront directed him in relation thereto, had knowledge thereof, or acquiesced therein.

The counter-assignment of error, on the part of the appellee, to the action of the circuit court in not decreeing the repayment of the full $750.00, with interest thereon, is not well taken. We consider the matter of the $400.00, which the Court refused to return plaintiff, in the other cause, to be adjudicated, and for which the plaintiff has no further redress.

The evidence relied upon by Horner and his wife to rebut the presumption of fraud in the transfer of the property by the husband to the wife falls short of the rule that the burden is upon the wife to show by clear and satisfactory evidence that the transaction was made in good faith, the consideration adequate and valuable, and that the consideration was paid out of her separate estate. All the testimony on this line, and in relation to these conveyances of the property from husband to wife, we find to be either wholly uncertain as to the amount of money claimed to have been in-

vested in the property by the wife, or to be of questionable
and supicious character. This testimony is wholly insuffi-
cient to meet the rule that when a wife claims in a contest
against the creditors of her husband to have purchased real
estate there is a presumption against the *bona fides* of the
transaction, which she cannot overcome except by clear and
full proof that the property was paid for by her with money
derived from some other source than her husband.   *Miller*
v. *Gillespie*, 54 W. Va. 450; *Burt* v. *Timmons*, 29 W. Va.
441; *Spence* v. *Smith*, 34 W. Va. 697; and many other cases.
The claim undertaken to be made by this testimony on be-
half of the husband and wife is that there was a secret
parol agreement, at the time of the purchase of the prop-
erty, that the husband was to hold it in his name in trust
for the wife, and the wife in her testimony says that this
was to give him a better rating in business. The only evi-
dence of such secret trust is that of the husband and wife.
This cannot overcome the presumption nor prevail against
the creditor in such case. There is *prima facie* a presump-
tion of *mala fides* as to such agreement. The uncorroborated
evidence of the husband and wife is insufficient to establish
such trust in favor of the wife arising out of such parol
agreement. *Pickens* v. *Wood*, 57 W. Va. 480. All the facts
and circumstances in the record, taken with the acts and
conduct of the parties, do not corroborate the testimony
of this husband and wife in their efforts to support a trust
agreement. The property was held in the name of the hus-
band for nearly two years, and upon the wife's own admis-
sion it was placed that way so that he would be in a position
to secure credit. We have nothing but the mere testimony
of the husband and wife of the private understanding be-
tween themselves that the property was to be held by the
husband for the wife, and the presumption of a gift, of the
very uncertain amount of money which it may be said went
into this property from the wife's means, is not sufficiently
rebutted by this testimony. The principles announced in
*Zinn* v. *Law*, 32 W. Va. 447, and similar cases, fittingly
apply. These conveyances have rightly been held fraudulent
and properly set aside.

There is no error, and the decree of the circuit court is
affirmed.

                                        *Affirmed.*