### In re TETER.

(District Court, N. D. West Virginia. November 2, 1909.)

1. FRAUDULENT CONVEYANCES (§ 277*)—WIFE'S PROPERTY—DELIVERY TO HUSBAND—PRESUMPTIONS—RIGHTS OF HUSBAND'S CREDITORS.

Under the law of West Virginia, where a wife delivers money or property to her husband, which he uses in his business, the presumption is that a gift was intended; and parol testimony of the husband and wife of a private understanding between themselves that the transaction should be considered a loan will not overcome such presumption as against creditors of the husband after his insolvency.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 799, 809–814; Dec. Dig. § 277.*]

2. TRUSTS (§ 44*) — FRAUDULENT CONVEYANCES (§ 299*) — EXPRESS TRUSTS — VALIDITY OF PAROL TRUST IN LAND—HUSBAND AND WIFE.

Parol trusts in land must be established by evidence clear, strong, and unquestionable; and the uncorroborated testimony of husband and wife is insufficient to establish a trust in favor of the wife in property purchased in the name of the husband as against his creditors, especially after the lapse of many years.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66, 68; Dec. Dig. § 44;* Fraudulent Conveyances, Cent. Dig. § 884; Dec. Dig. § 299.*]

3. BANKRUPTCY (§ 188*)—TRUSTS (§ 81*)—EQUITABLE LIEN—CONTRIBUTION BY WIFE TO PURCHASE OF PROPERTY.

The wife of a bankrupt filed a petition, alleging that some 29 years prior to the bankruptcy her husband's father conveyed to him certain land, which he still owned, valued at $3,000, taking his notes for $1,000, which it was agreed petitioner should pay out of money received from her relatives, and should have a corresponding interest in the land, or a lien thereon for the amount contributed by her. According to the testimony of herself and her husband, she furnished him the money to pay the notes, which, when paid, together with the deed, which was unrecorded, were delivered to her to retain as security. Nothing was done to vest her with any legal interest in or lien on the property prior to the bankruptcy, except that, some 10 years after the purchase, she set up her claim in a creditors' suit brought against her husband and others, which was afterward dismissed. Held, that such evidence was not sufficient to establish a resulting trust in her favor in the land, nor to give her an equitable lien as against the bankrupt's creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188;* Trusts, Cent. Dig. §§ 115–118; Dec. Dig. § 81.*]

In Bankruptcy. In the matter of Thomas B. Teter, bankrupt. On review of order of referee. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mary Sophia Teter, wife of the bankrupt, has filed herein her petition, in which she alleges that she was a daughter of Braxton B. Durrett, a man of large estate, and was married to Teter March 5, 1874; that his father, Jesse Teter, on February 3, 1880, executed to him a deed for two tracts of 167 and 20 acres of land, for a stated consideration of $1,000, of which $250 is recited to have been paid, and the residue, $750, was payable in three installments, of $250 each, for which notes were given and a vendor's lien retained upon the land—a life estate in favor of Elizabeth Teter, wife of said Jesse Teter, the grantor, being also reserved in the 167-acre tract, the said Elizabeth Teter being still alive and holding such estate, and Jesse Teter, the grantor, being now dead. It is then charged that Jesse Teter by this deed in fact advanced to his son, the bankrupt, $2,000, the land being in fact valued at $3,000, and that such advancement was made with the express understanding that, when the deed was delivered, petitioner, Mary Sophia Teter, wife of the bankrupt, should pay, out of advancements made to her from her father's estate, and not received from the estate of her husband, the $1,000 provided on the face of the deed to be paid for the land; that she did furnish, and, through her husband, paid to Jesse Teter, the $1,000 out of her separate estate, and the notes for the deferred payments, as also the deed for the land, was delivered to her, with the distinct understanding that she was to have conveyed to her the land in value to the extent of such payment, or that a vendor's lien was to be retained upon the land to secure its repayment to her; that said notes and deed have always since remained in her possession, the deed unrecorded, no part of the money having been repaid her; and she charges that such money, so paid by her, constitutes an equitable lien and charge upon the lands superior to all others, except as to the life estate in the 167-acre tract in favor of Elizabeth Teter. It is then charged that her husband, the bankrupt, was entirely free from debt until 1892, when he became surety upon a bond of Williamson, sheriff, upon which bond the state recovered a judgment, instituted a general creditors' bill against Williamson and his sureties, in which an order of reference was made, and a release of liability on the part of the bankrupt was secured, but, before such release was obtained, her petition in said cause was filed, setting forth her rights, as here urged, and in support of which the depositions of Jesse Teter, Minnie M. Teter, Worth Teter, Floyd Teter, and herself were taken; that the depositions of Jesse Teter, Minnie M. Teter, and Worth Teter, now all dead, have been lost from the files of said cause, and cannot be found, but she files verified copies of her petition, and the depositions of herself and Floyd Teter, so filed in the said cause of the state, the prosecution of which, it is alleged, has been abandoned. The prayer of the petition is that she be declared a creditor of the bankrupt to the extent of the $1,000 so paid by her into the land, and that this sum, with its accrued interest, be given priority of payment out of the proceeds of sale of the lands. This petition, filed before the referee on May 16, 1909, has been contested by the trustee, who has filed before the referee his exceptions and objections thereto, as also by the creditors. Depositions of petitioner, Floyd Teter, O. G. P. Durrett, and Thomas B. Teter, the bankrupt, have been taken, and the referee has determined to uphold her claim, and give it, to the extent of the $1,000 and its interest, priority of payment out of the proceeds of the sale of the 167 and 20 acre tracts, subject to the life estate of Elizabeth Teter in the 167-acre tract. At the instance of the trustee and unsecured creditors, this decision of the referee is brought here for review.

William T. George, for trustee.
Harry H. Byrer, for creditors.
Samuel V. Woods, for claimant.
J. Blackburn Ware, for bankrupt.

DAYTON, District Judge (after stating the facts as above). The agreement charged to have been made at the time the two tracts of land were conveyed by his father to the bankrupt was that the petitioner should pay the $1,000 and have conveyed to her the land in value to

the extent of such payment, or that a vendor's lien was to be retained upon the land to secure her the repayment of her money. Neither of these things has ever been done, and, after the lapse of 29 years, the question arises whether the pleading and evidence justifies equity and good conscience to do either for the relief of petitioner, against the creditors. The decision of the referee is in effect to charge this $1,-000, with its accumulated interest, in the nature of a purchase-money lien, upon the land, as having priority over all other debts except the life estate of Elizabeth Teter. This practically means that the wife of the bankrupt shall absorb the whole value of the lands, and the creditors shall take nothing.

It seems to me this is clearly untenable. Taking the most favorable view possible of this ruling, and quoting the testimony alone of Mrs. Teter, it seems clear that the deed was made direct to her husband by his father; that the lands were worth at the time $3,000; that she took no written evidence of the agreement; that she did not pay the $1,000, or any part of it, to the grantor, Jesse Teter, but "furnished" it to her husband, partly in money and partly in stock, apparently, which he sold, who paid it to his father, who surrendered the notes to her husband as paid, and he in turn delivered them over to her, with the deed. She says the deed was delivered to her, and has been in her possession since about six months after its date, and the notes were delivered to her by her husband as of the times when he discharged them. They were not assigned to her, and her sole claim to enforce an equitable lien against the land in her favor, independent of oral agreement with her husband, rests upon her possession of the title deed and these notes. I can find no authority warranting me to hold the possession of this deed and of these notes, under these circumstances, as constituting an equitable assignment to her by Jesse Teter of the existing vendor's lien in his favor.

A vendor is not ordinarily compelled to receive payment for and assign to a third person such a lien. Jesse Teter, the father-in-law, might have been entirely willing to have done so; and it is incomprehensible why he did not do so, if at the time it was contemplated to secure this petitioner this money by and through his existing vendor's lien. Therefore, independent of all questions of trust relations, the whole matter resolves itself into this: Mrs. Teter loaned her husband this money, for which she took from him no note or evidence of debt of any kind. With this money he paid off and discharged the vendor's lien to his father. The only way Mrs. Teter sought to secure herself for the money so loaned her husband was, six months after its execution, to take possession of the deed and these notes, as her husband paid and delivered them to her. They were living together, and her possession was in fact his. A line of decisions in this state has fully established the principles that where a wife delivers money or property of her own to her husband, which he uses in his business, the presumption is that such delivery was intended as a gift, and when the facts and circumstances tend to show that a gift was intended, and that the husband used and dealt with the property as his own, the mere parol testimony of the husband and wife of a private understanding between themselves that the transaction should be considered or was in-

tended as a loan to the husband by the wife, and not a gift, will not, as against the creditors of an insolvent husband, rebut the presumption of a gift. Zinn v. Law, 32 W. Va. 447, 9 S. E. 871; Maxwell v. Hanshaw, 24 W. Va. 405; McGinnis v. Curry, 13 W. Va. 29; Bank v. Atkinson, 32 W. Va. 203, 9 S. E. 175. And in this last case it is held that the fact that the wife's claim for money of hers received by her husband from the sale of her lands was barred by limitation tends strongly to repel her claim as against her husband's creditors.

This money of Mrs. Teter was received by her husband, it may be assumed, at various times between February 3, 1880, the date of the deed, and September 1, 1885, when the last note was payable. The evidence does not clearly establish the amount in a sum exceeding $811.50, unless we assume she increased the sums received by her from her father and aunt by investment and loans at interest, which are not shown by the evidence. The first effort attempted to secure repayment of this money was not made until after her husband had become Williamson's surety on his sheriff's supplemental bond, and judgment for $10,000 had been rendered in favor of, and a chancery suit had been instituted for its enforcement by, the state. Then she filed her petition in this chancery suit, asserting her claim as a debt due her, based upon the same facts set forth here. The exact date of the filing of this answer is not shown; but it was not filed before 1895, because the suit was not instituted until that year, and it is probable it was not filed until the following year, 1896, when her depositions were taken in support of it. Thus for 10 years, at least, she allowed this money to remain in her husband's hands, with no written evidence of it having been loaned to him, with him in full possession of the land, with no assignment from her father-in-law of the notes, which she says her money paid, although such assignment could have been taken from him any time prior to his death, with no judgment taken by her, no trust or mortgage lien taken on the land, although such actions could have been taken at any time apparently, in short, with nothing done in accord with legal methods to indicate that this money was to be saved to her as her separate estate.

It is true that great reliance is made upon the facts that the deed was not recorded, but, together with the notes, when paid off by her husband, were placed in her custody, as claimed, for security for her debt. That this was the purpose of withholding the deed from record, instead of for other reasons, such as the existence of the life estate outstanding in Elizabeth Teter, and that she had the custody of the deed for the purpose of security, is alone proven by the husband and wife. It does not impress me, if this evidence be admitted to be sufficient to establish the facts claimed (although the authorities cited seem clearly to hold it is not), that the mere possession of these papers alone constituted any security for this debt. It could vest no title in her to the land, nor could it give her any lien upon it, nor could it, with no assignment of any kind, transfer to her the vendor's lien retained by the grantor upon it. We must necessarily sympathize with the wife, who must lose her money by reason of the bad management of her husband; but at the same time we cannot forget that the relation of husband and wife is such that their transactions with each other must be closely scru-

tinized. The temptation to husband and wife to shield each other, as against creditors, when insolvency comes, is almost irresistible to most people. If we were to hold that a man could pay off his purchase-money notes secured by vendor's lien, place these notes and his deed in his wife's custody, and thereby empower her, 29 years afterwards, when he was bankrupt, and after he had executed a trust upon the land for a large amount (as Teter sets forth in his schedule he has done), to revive and enforce the vendor's lien to the extent of the notes and accumulated interest in her favor, because it is claimed she allowed him to use her money, the door to fraudulent transactions between husband and wife as against innocent creditors would be thrown wide open.

Nor do I see how the contention can be here upheld that a resulting trust as to the land has been established in her favor, for several reasons: First, because the evidence is not sufficient to establish it; second, because the petitions filed, both here and in the abandoned chancery cause of State v. Williamson, do not claim this measure of relief, but, on the contrary, insist upon repayment of the $1,000 and its accumulated interest as a debt secured by equitable lien, by virtue of her possession of the deed and notes and her husband's oral agreement that they should constitute such lien as security; and, third, because I do not think the facts, if admitted are sufficient to establish such trust.

In support of the first proposition, it is to be noted that the courts of the country pretty generally, and the Supreme Court of Appeals of this state particularly, have fully established the principle that trusts in land by parol must be established by evidence clear, strong, and unquestionable. Hudkins v. Crim, 64 W. Va. 225, 61 S. E. 166; Armstrong v. Bailey, 43 W. Va. 778, 28 S. E. 766; Hatfield v. Allison, 57 W. Va. 374, 50 S. E. 729; Faulkner v. Grantham, 55 W. Va. 317, 47 S. E. 78; Jesser v. Armentrout's Ex'r, 100 Va. 666, 42 S. E. 681. The uncorroborated testimony of husband and wife is insufficient to establish an express trust in favor of the wife in property purchased in the name of the husband, against a creditor of the husband seeking to subject such property to the payment of his debt. Cheuvront v. Horner, 62 W. Va. 476, 59 S. E. 964; Pickens v. Wood, 57 W. Va. 480, 50 S. E. 818. The evidence in this case is that of the husband and wife, of Floyd Teter, the husband's brother, and of O. G. P. Durrett, the wife's brother. The last two testify alone from information, and what they have understood and heard. Durrett says:

"I did not see the $1,000 paid; but it was my understanding that it was paid by my sister, Sophia Teter. That was understood as a family transaction at the time. It was my understanding that Jesse Teter gave the $2,000."

Again:

"My recollection is that it was something over $500 she got from her father and aunt, and part of this she got in stock from my father. I don't know what she got for the stock when she sold it. I know it was over $100 she got from her aunt; but just the exact amount I can't recall."

And in answer to the question:

"Please state, if you know, whether your sister, Mrs. Sophia Teter, had the custody of the deed from Jesse Teter to her husband for this land, and whether

she had surrendered to her the several purchase-money notes as they were paid"

—he answers:

"That was my understanding all the time that she had the deed, and it was my understanding that the notes were given to her."

And again in answer to the question:

"Do you know whether there was any understanding between Jesse Teter and Sophia Teter and T. B. Teter, at the time this deed was executed in 1883 (deed was executed in 1880), as to whether Sophia was to have any part of the land, or other security for the money, recited in the deed as the $1,000 consideration?"

—he answers:

"I remember hearing my father speak to her concerning this matter, advising her to make herself secure for the money that she had paid into this land; that it should be deeded to her in so far as her money paid for it. That was about the time of the transaction. But if Mr. Teter should die she would only get one-third of what her money paid for."

He then says:

"There was an understanding among them at that time, and in the family, that she was to be secured in the land to the extent that her money paid the purchase price." that this was "well understood" by Jesse Teter, T. B. Teter, and the Teter family, as also he thinks it "well understood in the neighborhood that she had the deeds and the notes."

Floyd Teter's testimony is in no particular more positive than Durrett's. He says:

"His understanding was that his [bankrupt's] wife was to get some money from her father and pay him [Jesse Teter] something back—something out of the farm."

He says she was to pay, he thinks, $1,000, and "I always supposed that she had a deed for it until this thing came up." He says: "I always understood it was Benton's wife's money" that paid the down payment, but admits he does not know who paid it, that he did not know who had possession of the deed, supposed it was in the family, and does not know why it was never recorded. He thinks the notes were turned over to Benton's wife, but has never seen them.

The evidence of both the husband and wife is significant. The wife says she gave T. B. Teter the $250 to pay the down payment, furnished to T. B. Teter the money to pay the deferred payments, that the deed was left in her possession to secure her in the money that she had furnished, that her husband, T. B. Teter, delivered the notes to her when he brought them home, to secure her money that she had given him to pay on the land, that the deed was never recorded because she was never recompensed for the money that she had paid in the land, and it was left in her possession to secure her for the money that she had paid. The husband testifies that it was his intention to convey her the 187 acres, and he turned over to her the deed and the notes her money paid on the land, and she was to hold them for security, and that is the reason the deed was never recorded. He further says:

"At the time the deed was made, my wife was sick, and she didn't go along; and when I came back she was dissatisfied that it wasn't made to her, and I

just turned over to her the title papers, and told her I would make it to her later. It just went along and was neglected. I was in good circumstances, and my father was in good circumstances, and it was just neglected."

Do not these statements clearly cast doubt upon the character of this transaction? Was the agreement that Mrs. Teter was to be "secured" in the repayment of her money by deposit with her of the deeds and discharged notes (an ineffectual way to secure money as against subsequent creditors and purchasers, as we have seen), or was she to be repaid by a conveyance of the land? If the husband had remained in good circumstances, would such conveyance have continued "just neglected" for all time? Is it not apparent, from this evidence, that these people, in sore financial straits, are not certain whether they should claim under the plea of equitable lien, or equitable assignment of the vendor's lien, or under the plea of a resulting trust in and to the land? And does not a doubt arise whether it was ever intended to seek an enforcement of either, unless it be against creditors? If so, why, after the release of the state's judgment against the husband as Williamson's surety, and the abandonment of the state's suit, was the conveyance of this land to Mrs. Teter still neglected until now, after a lapse of 29 years after the transaction is alleged to have commenced, he has become involved again, and bankrupt?

Nothing would be more natural than for one so holding to seek speedily and constantly to resolve such holding into a solid and lasting holding by deed about which no question could be raised. Therefore this long lapse of time, taken in connection with the other circumstances and the relationship of husband and wife, throws such doubt upon the alleged purpose to establish originally such trust as to constrain me to hold that it is not proven by that clear, strong, and unquestionable evidence which the law requires.

But, finally, admit the facts, and I do not believe them sufficient to establish such trust. In the case of In re Henderson (D. C.) 142 Fed. 568, I reviewed the whole history of the origin of trusts by parol in Virginia and West Virginia as disclosed by the decisions of the courts of last resort in these two states. Incidentally it may be remarked that this case was reversed by the Circuit Court of Appeals for this circuit (Henrie v. Henderson, 145 Fed. 316, 76 C. C. A. 196), upon the sole ground that the court in bankruptcy had no jurisdiction, after sale of bankrupt's lands confirmed, to enjoin the bankrupt's trustee, making the sale, from conveying to the purchaser the land at the instance of one seeking to enforce a resulting trust in such purchase. After the dismissal of the bill, Henderson, the claimant of the trust, instituted his suit in the circuit court of Wood county to establish the trust and to enjoin the trustee in bankruptcy from conveying the land to Henrie, the purchaser. The injunction prayed for was granted, a motion to dissolve overruled, and an appeal taken to the Supreme Court of Appeals,[1] where it was held that Henderson had right to maintain his cause for a specific performance of the oral contract, but that the state courts did not have jurisdiction to enjoin conveyance by the trustee, he being a federal officer, and such injunction would be an interference with the order or judgment of a federal court. It therefore directed a dissolution of the injunction.

1 61 W. Va. 183, 56 S. E. 369.

It wor'd seem that the effect of these decisions is practically that a trustee in bankruptcy, who has sold the land of the bankrupt, such sale being confirmed by the referee, becomes sui generis, with jurisdiction in no court to control his subsequent actions. However, the legal principles relating to trusts of this character, determined by me in the original cause, I understand to be in effect affirmed by the decision of the Supreme Court of Appeals of the state. I there held: First, where one, before a sale, agrees to buy land in his name, for the benefit, in whole or in part, of another, who pays the purchase money, or his aliquot part thereof, an express trust arises, enforceable in equity; second, where one buys land under executory agreement, and afterwards, before, however, legal title is passed, verbally agrees that, if another will pay the purchase money, he shall have the land, and that other does so, the trust is enforceable in equity; third, both express and constructive trusts in lands can be created, declared, and proven by parol evidence.

It seems to me the facts here do not prove a trust to have been established under these principles. Such trusts would have to be enforced by a decree directing conveyance to the cestui que trust of the land, or such part thereof as she paid for. Currence v. Ward, 43 W. Va. 367, 27 S. E. 329; Murry v. Sell, 23 W. Va. 475; Shaffer v. Fetty, 30 W. Va. 248, 4 S. E. 278. No oral agreement to hold in trust or payment, made after legal title has passed can constitute such trust good against the statute of frauds. Nor will such resulting trust ever arise in favor of one paying for land conveyed to another, where such payment is only a loan to such other person. Currence v. Ward, supra; Harris v. Elliott, 45 W. Va. 245, 32 S. E. 176. Smith v. Turley, 32 W. Va. 14, 9 S. E. 46, to my mind, presents many parallel conditions to this one. It is there doubted whether a resulting trust arises in favor of a wife, if the husband acquires property with her separate estate, and without her knowledge and consent takes title in his name. If so, it is held (1) the proof must be clear and explicit to establish that fact especially against the husband's creditors; (2) long lapse of time will defeat its enforcement; and (3) it must arise at the time title is taken. No subsequent oral agreement or payment will create it.

In this case it seems very clear, from the evidence of both husband and wife, that she was not present when the conveyance was taken from Jesse Teter; that she did not pay to Jesse Teter the $250 down payment, but "furnished" the money to her husband, who paid it; that he took the deed to himself, without her knowledge and consent at the time, and subsequently, when she expressed her dissatisfaction, he deposited with her the deed and notes as security for her money, which he had used, intending to convey to her the land (apparently, from his statement, the whole of it); but this, owing to his being in good circumstances, he "just neglected" to do. With this it seems Mrs. Teter was content, made no effort to secure such conveyance, took no evidence of the debt, and no other security therefor, and sought to assert no claim to, interest in, or lien upon the land until 10 years after, when her husband was in danger of losing it as Williamson's surety. When this danger passed, she seems to have been satisfied to leave the matter in exact statu quo for 19 years longer, when her husband's bankruptcy makes the loss of the land to her husband inevitable. I am very clear-

ly of the opinion she has no resulting trust in and to the land to enforce, that she has no assignment legal or equitable to the vendor's lien, and no such equitable lien by reason of her possession of the deeds and notes as will give her priority over creditors. At the most, she has only an unsecured claim for her money used by her husband, long since barred by limitation, which I understand has been pleaded by the trustee against it.

The decision of the referee will be reversed.